(65 App. Div. 105.)

### LEESON v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. November 8, 1901.)

1. MUNICIPAL CORPORATIONS — SEWER — CONTRACT — OVERTIME—DEDUCTION— PLEADINGS—ISSUES.

 A contract with a city for a sewer provided that the work should be completed in a certain time, excluding Sundays, etc., and delays caused by the city; the computation of time to be determined by the commissioner of public works, who should certify it in writing. A complaint to recover a deduction for overtime alleged a demand for such certificate and its refusal by the commissioner in bad faith, and the answer denied the refusal and averred that a certificate was furnished. *Held,* that the issue presented was whether such certificate was in fact furnished, and not until it was determined that it had been refused in bad faith could any question as to the city's responsibility for delays arise.

2. SAME—DEPUTY COMMISSIONERS—CERTIFICATE—SUFFICIENCY.

 Where the deputy commissioner of public works had received written authority to perform all the commissioner's duties, and it was to the

deputy that the contractor applied for the certificate, a paper furnished as such certificate was not insufficient because signed by the deputy, instead of the commissioner himself.

**3. SAME—DATE.**

The fact that the certificate was undated did not invalidate it, where the evidence showed that it was made some time in a certain month, during which various conferences had been had between the parties as to responsibility for overtime.

**4. SAME—HEARING.**

Although it did not clearly appear that the certificate was made after a hearing had been accorded the contractor, it was not therefore invalid, where it did appear that the question of overtime had been discussed by the parties many times, and that the commissioner adhered to the determination expressed in the certificate.

**5. SAME—ELEMENTS OF DELAY—SPECIFICATION IN CERTIFICATE.**

The contract provided that, in the computation of the time, the length of time during which the work might be delayed "in consequence of the weather or tides, or any act or omission" of the city, "and also Sundays and holidays, * * * shall be excluded." *Held*, that the deputy commissioner's certificate was sufficient, though the various elements of delay were not expressly specified therein; it appearing inferentially from the certificate that all proper elements were considered by the deputy in reaching his determination.

Appeal from trial term, New York county.

Action by William G. Leeson against the city of New York. From a judgment in favor of plaintiff, entered on a directed verdict, defendant appeals. Reversed.

The action was brought to recover a balance of $480 alleged to be due the plaintiff from the city for work performed under a contract for the building of a sewer in Audubon avenue and 168th street. The work done amounted in the aggregate to $7,422.31, of which there has been paid $6,942.31, and the remaining sum of $480 was retained by the city as liquidated damages under the contract for 24 days of overtime. The complaint alleged substantial performance, and averred "that prior to the bringing of this action the plaintiff duly demanded of the commissioner of public works * * * that he certify in writing the number of days caused by any act or omission on the part of the said mayor, etc., as required under clause E of the said contract; but, notwithstanding the said demand, the said commissioner of public works unreasonably and in bad faith refused to make said certificate." The answer denied that the commissioner had refused to "make his certificate in writing determining the length of time during which the work or any part thereof had been delayed in consequence of the condition of the weather or tides, or by any act or omission of the parties of the first part," and averred that he had so certified, and had determined that the plaintiff had exceeded the number of days allowed by 24 days. The answer also sets forth clause E of the contract, which is as follows: "The said party of the second part hereby further agrees that he will commence the aforesaid work on such day and at such place or places as the said commissioner may designate, and progress therewith so as to complete the same in accordance with this agreement on or before the expiration of 180 days thereafter; that the said number of days shall not be construed to mean consecutive days, but the aggregate time of all the inspectors who may be employed on the work; and that, in the computation of said time, the length of time (expressed in days and parts of days) during which the work or any part or section thereof has been delayed in consequence of the condition of the weather or tides, or by any act or omission of the parties of the first part (all of which shall be determined by the said commissioner of public works, who shall certify to the same in writing), and also Sundays and holidays upon which no work is done, shall be excluded. * * *"

The work began on August 17, 1896, and progressed continuously, excepting for bad weather, Sundays, and holidays, up to May 19, 1897. The plain-

tiff introduced evidence that the work was delayed because he was ordered to lay no brick when the temperature was below 40 degrees, and there is evidence that such orders were given him in the form of a letter, dated December 5, 1896, signed by the engineer in charge and approved by the deputy and acting commissioner; and there is testimony that a thermometer was provided and used, and the directions followed, for a considerable time, thereby delaying the work. The plaintiff testified that just prior to the bringing of the action he made a demand upon the acting commissioner of public works for a certificate as to acts or omissions on the part of the city causing delay, and did not get it. At the close of the testimony both sides moved for the direction of a verdict. The defendant argued that the complaint alleges that a demand for a certificate was made and unreasonably refused, and the defense was that a certificate had been given showing a determination by the commissioner of the overtime; and, this having been proved, it was a perfect answer to the plaintiff's cause of action; and a verdict should accordingly be directed in favor of the city. The plaintiff's counsel, on the other hand, insisted—and this is the theory set forth in the complaint—that there was no certificate given, although a demand for one had been made, and, further, that no certificate under the contract was ever made, and that upon the proof offered, showing that there was an unreasonable refusal to make any certificate and that the contract had been fully completed by the contractor, he was entitled to a direction of a verdict in his favor for the amount of money which had been retained by the city in charging him for overtime. This latter was the view taken by the learned trial judge, and he accordingly directed a verdict for the plaintiff for the amount withheld; and it is from the judgment entered upon the verdict so directed that the defendant appeals.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

Terence Farley, for appellant.
L. Laflin Kellogg, for respondent.

O'BRIEN, J. The issue tendered by the pleadings, and the one involved on the motions made by both parties for the direction of a verdict, is whether or not a certificate in compliance with the provisions of the contract was made by the commissioner of public works; and that is the single question presented upon this appeal. We have not, in this formulation, overlooked the insistence of the respondent that there is evidence tending to show that the defendant delayed the work, and thus abrogated the time limit in the contract, and that, apart from this, no justification was shown for the deduction for overtime penalty. If no certificate was made, this would be an important consideration; for it would leave the whole subject open, and entitle the plaintiff to show the actual number of days spent on the work over and above days allowed by the contract, and who was responsible for the delays. By the terms of the contract, however, these were to be determined by the commissioner; and it would only be in the event of his refusal to make such a determination, or upon proof of corruption, bad faith, misconduct, or palpable mistake in the certificate made, that an inquiry into the time spent or the delays made would be permitted. In Van Aiken v. City of New York, 18 App. Div. 89, 45 N. Y. Supp. 467, it is said:

"It would seem to be a condition precedent to the plaintiff's right to be relieved from the deduction for delay that the question of responsibility for

such delay should have been passed upon by the commissioner of public works, or that it should appear that the commissioner had refused to make the prescribed certificate on the subject."

We are required to examine that case critically, because, if it is, as insisted by the respondent, in all respects identical with the one before us, then it is an authority which we should and would follow. There the complaint alleged the full performance of all conditions and covenants on the part of the contractor, and the city's failure by delaying the work to fulfill them. By way of defense, the city pleaded, not only the rightful retention as liquidated damages, under clause E, of the sums claimed by the plaintiff, but also two releases executed by him. The question presented, therefore, was as to whether the releases supported the defense of an accord and satisfaction, and the court held that this had not, as matter of law, been made out. There was no question in that case of whether a certificate had been made; the fact being that the contractor was allowed to introduce evidence without objection that he had not procured any certificate, though he had endeavored to do so. If, in the present case, therefore, no certificate was made, then an analogous question would be presented; but, as we stated at the outset, the issue with which we are concerned, upon the pleadings and the proof here, is as to whether a certificate was or was not duly made in compliance with the terms of the contract. The pleadings were predicated upon the theory that there was no certificate; that, there being no certificate, it was entirely competent for the contractor to show, after he had made a demand for one and it was unreasonably refused, just who was responsible for the overtime. In other words, as a condition precedent to maintaining the action, it was incumbent on the plaintiff to show that there was no certificate given and that the demand for it was unreasonably refused. Upon this theory it was competent to introduce evidence tending to show that the overtime was due to delays caused by the city. The city, on the other hand, insisted that a certificate had been made; and whether it was or not is the question for our determination. The paper relied upon by the city is as follows:

"Commissioner's determination of time in accordance with clause E, page 32, of contract:

180 days allowed.
  30  "    "    for rainy weather.
  24  "  overtime charged to contractor.

234  "  inspector's time.

"Howard Payson Wilds,
"Deputy Commissioner of Public Works."

It is evident from its phraseology that this was an attempt, at least, to make a certificate; and the question is, was that attempt successful? The paper was assailed, in the first place, because it was signed by the deputy, instead of the commissioner himself. It was shown, however, that the commissioner had given written authority, pursuant to law, to the deputy to perform every duty devolving upon the commissioner covering the period when the

paper in dispute was made and signed. It was shown, therefore, that the deputy was the acting commissioner, and the person to whom the contractor applied and had his discussions with concerning the certificate; and this objection, therefore, to the paper, we regard as hypercritical.

The paper is undated, and the exact day upon which it was made does not appear, though it is evident, from the letters and other evidence in the case, that it was given in the month of July, 1897. Thus the plaintiff testified:

"I made a demand on the commissioner in July, 1897, and the engineer in charge of sewers, in connection with this overtime. I had a hearing, conversation, and conferences in connection with that demand. These conferences took place in the commissioner's office."

The plaintiff further stated that, in addition to the deputy, who was then acting commissioner, the engineer and others were present at these conferences, where the question as to who was responsible for the overtime was discussed. While it was not entirely clear whether any hearing or conferences took place before the actual making and signing of the paper, it is placed beyond doubt that the whole subject of the correctness of the determination of the commissioner was gone over many times, and that the commissioner adhered to the determination expressed in the paper.

The respondent's contention is that the paper thus signed was ineffectual and invalid, because it failed to express or state his conclusion with respect to all the elements that should have been considered by him in reaching his determination, and particularly because it made no specific reference to Sundays and holidays and omissions or acts by the city causing delay. To determine whether this contention is sound, we must refer to clause E of the contract, which on this subject provides:

"In the computation of said time, the length of time (expressed in days and parts of days) during which the work or any part or section thereof has been delayed in consequence of the condition of the weather or tides, or by any act or omission of the parties of the first part (all of which shall be determined by the said commissioner of public works, who shall certify to the same in writing), and also Sundays and holidays upon which no work is done, shall be excluded. * * *"

There is nothing in this record to show that the commissioner overlooked any of the items which he should have taken into account in reaching his determination in accordance with this clause of the contract; and it is only because he did not, in making up his form of certificate, say in express terms that Sundays and holidays were excluded, and that there were no omissions or acts on the part of the city causing delay, that objection is taken to its sufficiency. There is nothing, however, in the clause to which we have referred, which requires the commissioner to set forth these items, or the grounds for his determination, or his mental operations in reaching a conclusion. And by fair inference it appears from the paper which he gave that the elements referred to in clause E were considered by the commissioner, because we have the total number of days allowed for the inspector's time, which

covers the number of days during which the work was in progress, and which impliedly excluded Sundays and holidays; for, as appears from his tabulated record, these were not to be included in the inspector's time, and then we have a computation in days of just how this inspector's time was made up, which included the days allowed for rainy weather and the overtime charged to the contractor, which, embracing, as it did, all the other days, necessarily excluded any days of delay caused by the city.

The respondent is in error in assuming that clause E required that the certificate should be in such a form as to expressly enumerate all the elements or items of computation which the commissioner was to consider under that clause in reaching his determination. What that clause required was no particular form, but a certificate which should clearly show, with respect to the computation of time, what was the determination of the commissioner. Measured by this rule, we think the certificate here in dispute, clearly showing his determination, was sufficient. Having reached this conclusion, which is the opposite to that reached by the learned trial judge, it would follow that, instead of the direction of a verdict for the plaintiff, a verdict should have been directed for the defendant.

The judgment accordingly should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.